UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN L. BOYD, | : |
| | : |
| Plaintiff, | : |
| | : CIVIL NO. 3:CV-05-2033 |
| | : |
| v. | : (CHIEF JUDGE VANASKIE) |
| | : |
| | : |
| UNITED STATES OF AMERICA, ET AL., | : |
| | : |
| | : |
| Defendants. | : |

**M E M O R A N D U M**

**I.    Introduction**

John L. Boyd, an inmate formerly housed at the Allenwood United States Penitentiary ("USP-Allenwood") in White Deer, Pennsylvania, assisted by counsel, brings this Federal Tort Claims Act ("FTCA") claim, 28 U.S.C. § 2671, et seq., alleging that unidentified USP-Allenwood medical staff members and two optometrists, Drs. James Weyand and David DeRose, were negligent in failing to properly evaluate, diagnose or treat his glaucoma, purportedly resulting in irreversible loss of vision in his left eye. Included in Boyd's Complaint is a state medical malpractice claim lodged against the optometrists. The United States and the optometrists are represented by separate counsel.

Presently before the Court are two potentially dispositive motions: (1) the United

States' motion for summary judgement (Dkt. Entry 9), asserting that Plaintiff cannot premise an FTCA claim on the alleged negligence of Weyand and DeRose because they were independent contractors, not government employees; and (2) Drs. Weyand and DeRose's motion to dismiss (Dkt. Entry 20), seeking the dismissal of Boyd's state law negligence claims due to his failure to file a Certificate of Merit as required by Pennsylvania law.

For the reasons that follow, the United States' motion for summary judgment will be denied and the optometrists' motion to dismiss will be granted.

**II.     Background**

Boyd contends that "[f]rom the period of January 14, 1995 through December 17, 2003, the medical staff at Allenwood Federal Penitentiary as well as Defendants Weyand and DeRose failed to properly treat and/or conduct comprehensive eye examinations sufficient to diagnose Plaintiff's progressive glaucoma." (Dkt. Entry 1, ¶ 14.)  On December 17, 2003, Boyd was examined by ophthalmologist David Lightman, MD, who diagnosed Plaintiff with advanced glaucoma and permanent loss of vision in his left eye as well as increased intraocular pressure in his right eye.  (Id. at ¶ 15.)  Plaintiff alleges that it was Defendants DeRose and Weyand's "negligence set forth [in the Complaint] that was the direct and proximate cause of [his] injuries and damages." (Id. at ¶ 20.)  On November 11, 2004, Boyd submitted a claim for Damage, Injury or Death to the Bureau of Prisons ("BOP").  (See Dkt. Entry 28-2, Plaintiff's Documents in Opposition to USA's Motion for Summary Judgment, Exhibit A.)  On April 7, 2005, the BOP

denied Boyd's Administrative Tort Claim, asserting that "[a]ll diagnostic studies and treatment recommendations made by the specialists who evaluated and monitored [Boyd's] condition were provided.  There is no evidence to suggest that negligence on the part of any Bureau of Prisons' employee resulted in Mr. Boyd's alleged personal injury."  (Dkt. Entry 1, Exhibit A.)  No Certificate of Merit pursuant to Pennsylvania Rule of Civil Procedure 1042.3 has been filed in this matter, nor has Plaintiff sought an enlargement of time to do so.

**III.   Applicable Standards.**

    **A.   Motion for Summary Judgment.**

Summary judgment will be granted if the record establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). Rule 56(c) imposes a burden on the moving party to point to an absence of evidence supporting the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the burden then shifts to the non-moving party. The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading." Saldana, 260 F.3d at 232.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Issues of fact are

"genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir.1988). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. Id. Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 5887 (citations omitted).

    **B.**  **Motion to Dismiss.**

    Federal Rule of Civil Procedure 12(b)(6) allows a defendant, in response to a complaint, to file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted . . . ." A motion to dismiss should not be granted if "under any reasonable reading of the pleadings, the plaintiff [ ] may be entitled to relief. . . ." Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). In making that decision, we must accept as true all well-pleaded allegations in the complaint, Maio v. Aetna, Inc., 221 F.3d 472, 481-82 (3d Cir. 2000), and construe any reasonable inferences to be drawn from them in the plaintiff's favor. See United States v. Occidental Chemical Corp., 200 F.3d 143, 147 (3d Cir. 1999).

**IV.    Discussion.**

        **A.    Boyd's FTCA Claims Against the United States.**

The FTCA permits litigation against the United States "for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b); United States v. Muniz, 374 U.S. 150 (1963). The FTCA, however, does not authorize suits against the United States based on the acts of independent contractors or their employees. See 28 U.S.C. §2671 ("the term 'Federal agency' ... does not include any contractor with the United States."); United States v. Orleans, 425 U.S. 807, 814 (1976); Logue v. United States, 412 U.S. 521, 527 (1973); Borja v. Gerlinski, No. 4:CV-04-2657, 2005 WL 2175708 *2 (M.D. Pa. Sept. 6, 2005)(J. Muir)("[I]f the negligence causing the injury was that of an independent contractor there is no basis for liability under the FTCA.").

        The distinction between a federal employee and an independent contractor for the purposes of the FTCA is whether the federal government has the power "to control the detailed physical performance of the contractor." United States v. Orleans, 425 U.S. 807, 814 (1976) (citing Logue v. United States, 412 U.S. 521, 528 (1973)); see also Norman v. United States, 111 F.3d 356, 357 (3d Cir. 1997)("[W]hether [the contractor's] day-to-day operations are supervised by the Federal Government.")(internal citations omitted). The United States is not liable for a contractor's negligence unless it supervises the contractor's "day-to-day operations."

-5-

Logue, 412 U.S. at 529.

The government argues that Drs. Weyand and DeRose are not BOP employees for the purpose of the FTCA. Plaintiff and the Defendant doctors oppose the government's motion, suggesting that: (1) the United States' motion is premature as no discovery has taken place;[1] and (2) Boyd's FTCA claim against the United States is not exclusively based on the actions of the optometrists, but also the negligent actions of BOP employees. (Dkt. Entry 22, Weyand and DeRose's Counterstatement of Fact, ¶ 5; Dkt. Entry 23, Weyand and DeRose's Opposition to USA's Motion for Summary Judgment; Dkt. Entry 27, Plaintiff's Opposition to USA's Motion for Summary Judgment.)

Based on the record before me, I do not find that additional discovery is needed to determine the status of Drs. Weyand and DeRose. First, I note that although Boyd's counsel affirms that the government "has not produced any documents or contracts to prove that Defendants Weyand and DeRose are not government employees," Plaintiff's counter-statement of material facts incorporates a copy of an optometry contract between the BOP and "Fed-Opt."

---

[1] A defendant may move "at any time" for summary judgment. See Fed. R. Civ. P. 56. There is no requirement that any discovery must take place prior to a party filing for summary judgment. However, when faced with a motion for summary judgment, a party may petition the Court to grant a continuance in the case to allow discovery to take place if the gathering of facts, not within the control of party, is required to fairly address the motion. See Fed. R. Civ. P. 56(f) (emphasis added). In making such a request, a party must file an affidavit that identifies "with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002). No party has filed a Rule 56(f) affidavit.

The contract is signed by Dr. Weyand. (See Dkt. Entry 27-1, Exhibit A; Dkt. Entry 28-1, Hoffa Affidavit, ¶ 6.) Second, the government has entered into the summary judgment record copies of the contracts between the BOP and the optometrists during the period in question without objection from any of the non-moving parties. (See Dkt. Entry 34-2, Exhibits in Support of the United States' Motion for Summary Judgment, Exhibit 2, Contract Number J428C-034; and Dkt. Entry 34-3, Exhibit 3, Contract Number J20104c-034.) Each contract is signed by Weyand and speaks for itself. These documents demonstrate that "FedOpt" is owned by, and comprised of several optometrists, including Weyand and DeRose. (See Dkt. Entry 34, p. 3, FedOpt's Bid Submission Letter.) The contracts, and their respective attachments, make clear that Drs. Weyand and DeRose are independent contractors and not BOP employees. The contracts specifically define the relationship between the co-defendants as contractual and "not a personnel appointment." (Id.) The contracts specify that Fed-Opt "will not be subject to Government supervision, except for security matters." See Dkt. Entry 34, Exhibit 2, Contract Number J428C-034, pp. 2, 15, 26, and 28; Dkt. Entry 34, Exhibit 3, Contract Number J20104c-034, pp. 13,14, 22 and 23. The Defendant doctors have not contravened the government's showing by averring that, despite the terms of the contracts, their activities were controlled by the government. Based on the record before me, the government is entitled to summary judgment with respect to Boyd's FTCA claim based upon the negligence of Drs. Weyand and

DeRose as they are not government employees.[2]

The non-moving parties' assertion that the United States' motion for summary judgment should be denied because its liability is not based exclusively upon the actions of Drs. Weyand and DeRose, but also that of "the medical staff at Allenwood Federal Penitentiary," is more persuasive than their first argument.  (See Dkt. Entry 1, Complaint, ¶ 14; Dkt. Entry 23, Weyand and DeRose's Opposition to the USA's Motion for Summary Judgment; and Dkt. Entry 26-1, Plaintiff's Opposition to the USA's Motion for Summary Judgment.)  Boyd asserts that "[t]he Government has produced no document, nor does the affidavit attached to its motion in any way contradict that there was negligence on the part of the medical staff."  (Dkt. Entry 26, Plaintiff's Brief in Opposition to United States' Motion for Summary Judgment.)  The government counters that the language of the counseled Complaint precludes any assertion of negligence against the BOP medical staff as ¶ 20 specifically attributes responsibility for the alleged negligent care to Drs. Weyand and DeRose.[3]

---

[2]  To the extent Boyd argues that the government is estopped from asserting the independent-contractor exception to the FTCA claim because it did not identify the optometrists as such in their rejection of his administrative tort claim, I disagree.  As the government notes, Boyd's administrative tort claim does not mention either Weyand or DeRose by name, and there was no reason, nor obligation, for the BOP in responding to the administrative claim to identify the optometrists as independent contract physicians.

[3]  Paragraph 20 provides:

> In the event it is determined that Defendants DeRose and Weyand are not employees of the United States of America or under

(continued...)

Before bringing a claim in federal court under the FTCA, the claimant must give notice of the claim to the appropriate agency. A federal court lacks jurisdiction over claims not fairly presented to the federal agency prior to the initiation of suit. See 28 U.S.C. § 2675. "Although an administrative claim need not propound every possible theory of liability in order to satisfy section 2675(a), . . . a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts." Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003)(citation and internal quotations omitted). The notice of claim must consist of: (1) a written statement sufficiently describing the injury in order to enable the agency to initiate its own investigation; and (2) place a sum certain on the value of the claim/injury. Id. at 362-63 (quoting Tucker v. United States Postal Serv., 676 F.2d 954, 959 (3d Cir.1982)). The purpose of the notice requirement is to give federal agencies the opportunity to evaluate claims and to settle them before they evolve into federal lawsuits.

The summary judgment record includes a copy of Plaintiff's Claim for Damages, Injury or Death submitted to the BOP. (See Dkt. Entry 28-2.) In that document, Boyd summarizes his claim as follows: "There was a five month delay in getting me to Dr. Lightman.

---

[3](...continued)
    contract with the Government so as to render the Defendant United
    States of America liable, Plaintiff alleges that <u>it was their
    negligence set forth above that was the direct and proximate cause
    of Plaintiff's injuries and damages</u>.

(Dkt. Entry 1, Complaint, ¶ 20)(emphasis added).

. . . The prisons' failures, including their failure to do comprehensive eye exams, their failure to consider my risk for glaucoma or to determine the cause of my decreased vision in 1999, their failure to refer me to an ophthalmologist in a timely manner so I could receive prompt medical treatment all contributed to a complete loss of vision in my left eye. . . ." (Dkt. Entry 28-2, Boyd's Administrative Claim for Damages).

Although Boyd expressly blames his treating optometrists as responsible for his injuries, he also claims those individuals responsible for making the timely referral appointments with the general ophthalmologist and the retina specialist were negligent in the scheduling of those appointments. (Id.) Clearly a delay in scheduling medically necessary care for non-medical reasons could stand as the basis of a claim of negligence against BOP medical personnel. The summary judgment record is devoid of any information as to who was responsible for scheduling Boyd's consultations with the specialists, i.e. the independent contractor or the USP-Allenwood medical staff. Thus, while it may eventually become clear that Boyd cannot produce evidence demonstrating negligence on the part of the USP-Allenwood medical staff, it cannot be said at this time that Plaintiff could not present a viable FTCA claim.

> **B.    Boyd's State Law Tort Claims Against Weyand and DeRose.**

Boyd invokes this Court's supplemental jurisdiction over his state tort claims of medical malpractice against the optometrists. Drs. Weyand and DeRose argue Boyd's pendent

tort claims should be dismissed due to his failure to file a Certificate of Merit as required by Pennsylvania Rule of Civil Procedure 1042.3 ("the Rule").

Under Pennsylvania law, a party filing a professional liability claim must file a certificate of merit in which a professional licensed in the same field supplies a written statement that a reasonable probability exists that the actions of the defendant fell outside acceptable professional standards and that the actions were the cause of harm suffered by the plaintiff.  See Pa. R. C. P. 1042.3(a)(1).  If a Plaintiff fails to file the required certificate within sixty (60) days of filing the complaint, Defendants may file a praecipe for entry of a judgment of non pros.  See Pa. R. C. P. 1042.6.  Plaintiff counters that submission of a Certificate of Merit is not required because the court is not exercising diversity jurisdiction over his state law negligence claim so that this rule of substantive law is not applicable.

Although the Third Circuit Court of Appeals has not expressly held that Pa. R. Civ. P. 1042.3 is a substantive rule of law versus a procedural rule of law, courts within this circuit have recognized the Rule as substantive.  See Robus v. Pa. Dept. Corrections, Civil No. 04-2175, 2006 WL 2060615, at *11 (E.D. Pa. July 20, 2006)(Pollak, J.);  Abdulhay v. Bethlehem Medical Arts, L.P., Civ. No. 03-4347, 2005 WL 2416012, at *4-5 (E.D. Pa. September 28, 2005)(Gardner, J.); Velazquez v. UPMC Bedford Memorial Hosp., 338 F. Supp.2d 609, 613 (W.D. Pa. 2004); Chamberlain v. Giampapa, 210 F.3d 154, 158-61 (3d. Cir. 2000)(New Jersey statute requiring the filing of a affidavit of merit in all professional malpractice

-11-

cases is substantive law); Lee v. Thompson, 163 Fed. Appx. 142 (3d Cir. 2006)(same).

Plaintiff's assertion that the rule of Erie R.R. v. Tompkins, 304 U.S. 64 (1938), applies only in cases brought within a federal court's diversity jurisdiction is manifestly incorrect.  The Erie doctrine applies to cases subject to the Rules of Decision Act, 28 U.S.C. § 1652, which covers any civil action in which state law applies.[4]  As explained in Felder v. Casey, 487 U.S. 131, 151 (1988), "[u]nder Erie . . . , when a federal court exercises diversity or pendent jurisdiction over state law claims, 'the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."  Thus, application of the Erie doctrine is not dependent on the jurisdictional basis of a case.  Accordingly, when addressing state law professional negligence claims in both diversity and supplemental jurisdiction cases, district courts in this circuit have applied Rule 1042.3.  See Robus, 2006 WL 2060615, at *11 (citing collection of cases applying Rule 1042.3 regardless of whether the state law claims are brought under the federal court's diversity or supplemental jurisdiction).

---

[4] Section 1652 provides:

> The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

The dispositive question here, therefore, is whether the Rule should be regarded as the substantive law of Pennsylvania. In Chamberlain, supra, the Third Circuit, addressing a similar New Jersey expert affidavit statute, expressed that it would be fundamentally unfair to subject one set of plaintiff's to the rule (those advancing state law claims in state court), but allow plaintiffs filing a malpractice claim in federal court to avoid the rule.  The court reasoned that this is the very type of forum shopping that Erie sought to preclude as it would lead to "the inequitable administration of the law."  Chamberlain, 210 F.3d at 161.  The Third Circuit Court of Appeals stressed that federal courts should apply state substantive law to ensure that the outcome of the federal litigation will be substantially the same as if the action had been brought in state court.  Id.

This reasoning is compelling.  Rule 1042.3 is indeed applicable to state law malpractice claims brought in federal court.

Boyd argues that the Rule does not apply to this matter as the alleged malpractice occurred prior to the adoption of the Rule on January 27, 2003.  (Dkt. Entry 30-1, Plaintiff's Opposition Brief to Drs. Weyand and DeRose's Motion to Dismiss).  In support of this argument, Plaintiff cites Chamberlain, 210 F.3d at 163 -64.  The holding in Chamberlain that the New Jersey law could not be applied to claims accruing prior to its enactment was premised upon a New Jersey Supreme Court ruling that the affidavit of merit statute did not, by its own terms, apply to causes of action accruing prior to its effective date.  See Cornblatt v. Barow,

-13-

153 N.J. 218, 708 A.2D 401, 406 (1998).

Although neither the Third Circuit nor the Pennsylvania Supreme Court has addressed the issue of Rule 1042.3's retroactivity, the Pennsylvania Superior Court and federal courts within this Circuit have consistently applied the Rule to cases instituted after its effective date regardless of the date of accrual of the alleged malpractice claim.  See Warren v. Folk, 886 A.2d 305, 2005 Pa. Super. 367 (2005)(application of Rule 1042.3 in medical malpractice action filed after enactment date where the alleged malpractice occurred prior to the effective date of the rule does not constitute a retroactive application); see also Iwanejko v. Cohen & Grigsby, P.C., Civ. No. 2:03-1855, 2005 WL 3234327, at *2 (W.D. Pa. Nov. 30, 2005)(McVerry, J.)(citing Velazquez v. UPMC Bedford Memorial Hosp., 338 F. Supp. 2d 609 (W.D. Pa. 2004)(Rule applicable to any lawsuit commenced on or after the effective date of the Rule). The reasoning of this unbroken line of case is persuasive, and will be followed here.

In this case, Boyd, with the assistance of counsel, filed this action in October 2005, more than two and a half years after the enactment of the Rule.  As such, Boyd is required to comply with Rule 1042.3 as it is not impermissibly retroactive to his case even though it is based, in part, on allegations of malpractice that precede the adoption of the Rule.

In sum, having concluded that Rule 1042.3 is applicable to Boyd's state law claims of medical malpractice, Boyd's failure to include a certificate of merit as to each optometrist's alleged deviation from acceptable professional standards of care, or seek an

-14-

enlargement of time to do so, is fatal.  Thus, Defendants Weyand and DeRose are entitled to the dismissal of the claims against them.  Lee v. Thompson, 163 Fed. Appx. 142 (3d Cir. 2006); Varner v. Classic Communities Corp., 890 A.2d 1068, 1073 (Pa. Super. 2006).

      An appropriate Order shall follow.

                                      **s/ Thomas I. Vanaskie**
                                      Thomas I. Vanaskie
                                      United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOHN L. BOYD,** : | |
| : | |
| **Plaintiff,** : | |
| : | **CIVIL NO. 3:CV-05-2033** |
| **v.** : | |
| : | **(CHIEF JUDGE VANASKIE)** |
| **UNITED STATES OF AMERICA, ET AL.,** : | |
| : | |
| **Defendants.** : | |

# O R D E R

**AND NOW**, this **29th day of SEPTEMBER, 2006,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT**:

1. The United States' Motion for Summary Judgment (Dkt. Entry 9) is **DENIED**.

2. Defendants Weyand and DeRose's Motion to Dismiss (Dkt. Entry 20) is **GRANTED**.

3. The United States is directed to file an Answer to the Complaint within twenty (20) days of the date of this Order.

                                                    **s/ Thomas I. Vanaskie**
                                                    Thomas I. Vanaskie
                                                    United States District Judge